### LORD & BURNHAM CO. v. PAYNE.

(Circuit Court of Appeals, Third Circuit. February 16, 1912. Rehearing Denied April 2, 1912.)

No. 75 (1,555).

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—EAVE FOR GREENHOUSE.

The Burnham patent, No. 583,247, for a metal eave, designed specially for use in greenhouses, consisting of an angle iron located between the side wall and the roof, having one member in substantially the same plane as the plane of the roof, with the remainder in the interior of the building, so as to be affected by the temperature therein and to communicate the heat to the outside member, thereby preventing the formation of icicles and the accumulation of ice and snow, was not anticipated, and in view of its superiority, for the important purpose sought, over any structure in the prior art, discloses patentable invention, and not merely mechanical skill. Also *held* infringed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the Circuit Court of the United States for the District of New Jersey.

Suit in equity by the Lord & Burnham Company against John A. Payne. Decree for defendant, and complainant appeals. Reversed.

For opinion below, see 190 Fed. 172.

John K. Macdonald (Eugene S. Macdonald, on the brief), for appellant.

Edward C. Davidson, for appellee.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. In the court below, a bill in equity was filed by the appellant, a corporation of the state of New York, in a suit against the appellee, charging infringement of letters patent No. 583,-247, dated May 25, 1897, to William A. Burnham. The answer set forth the usual defenses of want of validity by reason of anticipation, lack of patentable invention, and noninfringement. The decree (190 Fed. 172) was in favor of the defendant, holding the patent invalid for want of invention, and from this decree the complainant has appealed.

In his specification the patentee speaks of his invention, as follows:

"My invention relates to an improved construction of eave adapted more especially for use in horticultural buildings, * * * and my objects are to produce a simple and effective construction and to avoid the use of wood plates and gutters at that part of the structure which, during the winter, allows snow and ice to accumulate in or on them, and thus prevents the perfect drain from the glass and the obtaining of an even temperature and sufficient light in the building.

"I accomplish the above objects by the use of an overhung metal piece which is placed between the side wall and the roof and so arranged that a portion of the metal is within the building so that it is affected by the temperature thereof. The heat of this part is conducted to the other part, which is outside of the building, so that it becomes heated and thus prevents any formation of icicles and the accumulation of snow.

"A further object of my invention is to provide a simple and effective construction for securing the several parts in a horticultural building at the junction of a rafter and the side wall, to serve as a means to carry the roof between rafters with the least possible obstruction of light, as will be hereinafter more fully described."

It is shown by the evidence that one of the serious difficulties that attended the construction of greenhouses was the accumulation of snow and ice on the roof and side walls. The patentee testifies:

"The water of condensation on the roof caused by the heated interior and the cold outside passing through the laps of glass, run down the glass on the outer side until, coming into contact with the wooden eave line, formed ice, the wood being a non-conductor and taking the temperature of the outside. This ice would hang on to the wooden member forming icicles, often extending to the ground on the outside of the building and remaining for days at a time, obscuring the light and forming an obstruction so that snow falling above it, in addition to the condensed water, formed cakes which frequently covered a large part of the roof. This ice, separated only by glass from the interior, kept out the sun and gave a chill to the air something like a refrigerator."

He adds that he has known cases where hundreds of dollars' loss was incurred by growers as the result of one spell of cold weather.

The use of a gutter on this style of a house only added to the difficulty, as it of itself formed a barricade for the snow and ice on the roof and increased the trouble. He states that similar constructions were used by builders previous to his invention, more or less modified in form but in no way obviating the troubles referred to.

Prior to the invention of the patent in suit, attempt was made by the device described in the patent to Gibbons, No. 471,356, issued in 1892, to construct an iron gutter at the junction of the side wall and roof, a portion of the curved contour of the gutter being exposed to the interior heat of the building, so as to warm the gutter and prevent the accumulation of ice and snow. The evidence clearly shows that this gutter failed to accomplish its purpose. Burnham, the patentee himself, in a prior patent, No. 535,091, sought by a "combined gutter and cornice plate for horticultural buildings" to simplify the construction thereof, and "to reduce the vertical section of the parts so that the least possible shadow shall be cast upon the plants and without extra expense to increase the durability."

His invention consisted of a "combined gutter and side plate of special form, adapted to form the direct connection between the side wall and roof." Burnham, the patentee, testifies:

"They (Gibbons' and Burnham's No. 535,091) were open to the same objections as the wooden gutter, as they held the snow and ice packed upon the roof the same as the wooden construction."

He says:

"The only advantage over the wooden construction which either of them possessed was, that the material being metal and taking its temperature in part from the interior, the ice and snow were loosened up and could be removed by hand * * * or would finally melt. For these reasons, they were called self cleaning, but they did not affect the cleaning of the ice and snow from the roof."

The old "Wood" patent relating to greenhouses is well shown in its drawings, which complainant's expert says "represent the side wall of a greenhouse, which obviously is not glazed, being 'solid wall, perhaps of brick or concrete." The top of this wall, in Fig. 3, is shown as capped with an angle iron, such cap being lacking in Figure 1. Complainant's expert says that his inference from this is, "that the angle iron cap in Fig. 3 does not extend the entire length of the side wall to form an eave," but merely represents bearing plates set in the upper edge of the side wall at intervals to form a bearing for the rafters. "This," he says, "is also consistent with the fact that the cap does not project beyond the side walls to carry the drip clear of the wall, but comes flush therewith. The matter is not described in the specification, nor is there any reference, either by letter or by text, to this cap plate."

The "Snead" patent also referred to by the defendant as part of the prior art, was issued over 26 years before the patent in suit, and was for an improvement in sky lights. The specification states that:

"My invention pertains to sky lights and consists in a certain construction and arrangement of parts, whereby free circulation of air is permitted, and water from condensation or leakage conducted off without liability of entering the building, as hereafter described."

Clearly, there is nothing in common here with the object stated of the patent in suit. What is relied upon by the defendant is the fact that one of the drawings shows, as testified to by defendant's expert, that—

"the angle iron of Snead has one member arranged, not only substantially in the plane of the roof, but exactly in that plane, and the glass rests upon it precisely as in the patent in suit; and the remainder of Snead's angle iron —that is to say, the other member or plate thereof—is within the interior of the building, and is affected by the temperature therein, and does transmit it to the part which is outside the building, and will prevent the accumulation of ice and snow thereon."

An examination of this patent and of the drawings compels us to agree with the opinion expressed by complainant's expert, as follows:

"This patent is not in the greenhouse art and hence is not pertinent to the present case. It shows an ordinary skylight, containing eight panes of glass, designed to be set in the roof of an ordinary wooden house, like a window. The description is very meager, but the important feature contemplated by Snead is the hollow ridge-pole and hollow purlins serving as gutters. Mr. Abbott points to the 'eave plate' P, which is not described in the patent, but which seems to be merely a short plate about equal in length to two panes of glass lying on the top of the side wall of the scuttle or other opening in the roof to be covered by the skylight, and provided with a gutter (referred to as w in the specification but marked m in the drawings) inside of the edge of the scuttle. This, I understand, he regards as the angle-iron of the Burnham patent in suit. In my opinion it is not an angle-iron, either in name or in substance; it enters in no way into the framing structure of the building to serve as a stringer piece for the support of the roof, like the angle-iron of Burnham, while it is perfectly clear that it has no relation whatever to a self-clearing eave, which is the purpose of the patent in suit. There is no indication that Snead ever thought of the matter of the utilization of the interior heat of the building, or that there was any heat in the attic or similar place where his skylight might be used, and much less is there any indication that his plate P was designed or could be designed so as to effect the thawing of ice by the internal applied heat and the elimination of the water while still in its thawed or liquid condition. To my mind the Snead patent does not touch in any way the particular problem which Mr. Burnham was dealing with or the particular means devised by him to solve the problem."

Nor does the claim of the patent in suit read on Snead's device, as the former is limited to an angle-iron located between the *side wall* and the *roof,* and is adapted to serve as a support for the edge of the roof and to have the side walls secured thereto, an element of the claim that cannot be disregarded. It seems clear that the Snead patent, in its declared purpose and functional feature, is entirely outside the somewhat narrow field occupied by the patent in suit.

Without more extended consideration of the references to the prior art by the defendant, or analyzing the subtle analogies made by the ingenuity of counsel, we content ourselves with saying that we do not find in this record that the prima facie case in favor of the complainant, as to the validity of its patent, has been overcome by the defendant, on whom rested the burden of proof in that respect. Being of opinion that the device of the patent in suit is a meritorious step in advance in the art to which it belongs, that it

involved invention, and was not anticipated in the prior art, we conclude that the patent is therefore valid, and that the complainant is entitled to its protection. In so deciding, we are not unmindful of the able and interesting opinion of the learned judge of the court below, from whom on this point we are compelled to differ. Our variant views in this respect serve to emphasize the recognized difficulty presented by the question, as to whether in a given case the inventive faculty or merely mechanical skill is involved. We now turn to the question of infringement.

The record contains a stipulation between the complainant and defendant, that the defendant had constructed, between the 1st day of January, 1908, and before the 1st day of July, 1908, a greenhouse, embodying in its construction angle-iron metal eaves and charged by the complainant to be an infringement of the patent in suit herein; that the said greenhouse was erected in the city of Trenton, in the state of New Jersey. Certain drawings were also stipulated between the parties, as correctly representing the construction of the said greenhouse and of the metal eaves.

We think the contention of the appellant is correct that, by an inspection of the drawings and the models referred to, it will appear that the defendant has appropriated the substance of the invention of the patent in suit. There are, it is true, certain additions and modifications in minor details, but the essential feature of complainant's invention—an angle-iron located between the side wall and the roof, and adapted to serve as a support for the edge of the roof and arranged to have one member in substantially the same plane as the plane of the roof, with the remainder thereof in the interior of the building, so as to be affected by the temperature therein, as shown and described in the specification and drawings—is plainly to be found as the essential feature of the defendant's structure. Defendant accomplishes the important purpose had in view by the complainant, viz., that the metal member in the same plane as the plane of the roof, and projecting over the eaves, warmed by the heat imparted to the interior member of the angle-iron, should compel the ice and snow collected on the roof to slide free from the building, unobstructed by any barrier created by the gutters adopted in former constructions. It is true that the angle-iron of the defendant is Z-shaped—that is, it has one more leg or member than that of the device of the patent in suit. This lower member serves to receive the lower portion of the sash bars, but it is, of course, supported by the upper portion of the metal eave. The side wall is secured thereto, and one member is obviously in substantially the same plane as the plane of the roof. with the remainder in the interior of the building, so as to be affected by the temperature therein.

Agreeing as we do with the learned judge of the court below, that "if complainant's device shows invention, the defendant's device is a clear infringement," it is only necessary to add that, as we find the complainant's device does show invention, the defendant is guilty of the infringement charged in the bill of complaint.

The decree of the court below is therefore reversed, and the case remanded with directions to enter a decree declaring the patent valid and infringed, and ordering an injunction and accounting.